**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PARALLEL SYNTHESIS TECHNOLOGIES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| JOSEPH DERISI, et al., | ) ) |
| Defendants. | ) ) ) |

Case No. 5:13-cv-05968-PSG

**ORDER GRANTING-IN-PART MOTION TO DISMISS**

**(Re: Docket No. 43)**

The bait-and-switch.  The inside job.  Certain complaints tell the story of the former.  Others the story of the latter.  Rare is the complaint that, like the First Amended Complaint in this case, tells the story of both.

The essence of the complaint goes something like this.  Plaintiff Parallel Synthesis Technologies, Inc. ("Parallel"), seduced by the potential for a long-term partnership, shared the details of its proprietary Parallume assay with Defendant Joseph DeRisi, a Professor of Biochemistry and Biophysics at the University of California, San Francisco.  Only later did Parallel find out that DeRisi had plotted with its agent and former Parallel employee Brian Baxter simply to take Parallume without any intention of sharing the spoils of its promotion and development.

1

Before the court is DeRisi, Brian Baxter, UCSF, the Board of Regents of the University of California, the individual voting members of the Board of Regents and the interim Chancellor of UCSF Sam Hawgood's motion to dismiss the FAC for failure to state any legally cognizable claim.[1]   Parallel naturally opposes, and the parties appeared for a hearing.[2]   Having considered the arguments, the court GRANTS Defendants' motion, but only IN-PART, as explained below.

## I. BACKGROUND

### A.   Factual Background[3]

Parallel develops and sells a multiplexed assay called Parallume for use in biotechnology research and development.[4]   Parallume enables researchers to identify the components of a particular mixture of nucleic acids and protein-antibody pairs while reducing costs, decreasing the amount of sample handling and increasing speed for analyzing materials.[5]   Parallel has received $6.02 million in grant funding and has spent $7 million over ten years in developing its Parallume platform, which includes Parallume–encoded beads, optical instrumentation, kits and protocols.[6] Parallel also has several related patent applications pending.[7]

Among Parallel's employees, Brian Baxter worked as a senior scientist.[8]   As a Parallel employee, Baxter had access to Parallume research and materials.[9]

---

[1] *See* Docket No. 43.

[2] *See* Docket No. 50.

[3] For the purposes of Defendants' motion, the court draws the following facts, accepted as true, from Parallel's FAC.  *See* Docket No. 33.

[4] *See* Docket No. 33 at ¶¶ 10-13.

[5] *See id.*

[6] *See id.* at ¶¶ 11, 15-16.

[7] *See id.* at ¶ 16.

[8] *See id.* at ¶¶ 17-18.

[9] *See id.*

Case No. 5:13-cv-05968-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1
2
3

In September 2008, Parallel founder Robert Haushalter was contacted by Professor DeRisi, whom it learned was an old friend of Baxter's.[10]  After Haushalter shared a white paper about Parallume, DeRisi expressed interest in using Parallume in his own research.[11]

4
5
6
7
8
9
10

DeRisi followed up with Parallel and asked Parallel to assist him with the preparation of a grant proposal to the Keck Foundation.[12]  DeRisi stated that he wanted to budget Parallel into the proposal as a subcontractor to create and supply Parallume beads.[13]  DeRisi also told Parallel he had a large financial backer who wanted to fund DeRisi to develop technology regarding disease surveillance and that he intended to work with Parallume to accomplish this.[14]  Haushalter, Baxter and an additional Parallel employee met with DeRisi's team multiple times.[15]

11
12
13
14
15
16
17
18

DeRisi requested sample Parallume beads for a grant "pre-proposal," which Parallel provided.[16]  Several weeks later, DeRisi informed Parallel that the pre-proposal was positively received and that "this grant, if successful, will be mutually beneficial."[17]  At DeRisi's request, Parallel supplied additional Parallume samples in confidence and a letter of reference to assist with the proposal.[18]  DeRisi responded by expressing interest in Parallel's optical instrumentation.[19]

19
20
21
22
23
24
25
26
27
28

---

[10] *See id.* at ¶ 19.

[11] *See id.*

[12] *See id.* at ¶ 21.

[13] *See id.*

[14] *See id.* at ¶ 24.

[15] *See id.* at ¶ 21.

[16] *See id.* at ¶ 23.

[17] *Id.* at ¶ 24.

[18] *See id.* at ¶¶ 26, 30-33.

[19] *See id.* at ¶ 35.

Case No. 5:13-cv-05968-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DeRisi did not, however contact Parallel again.[20]  No later than August 11, 2009, DeRisi submitted the proposal and subsequently received a $1 million grant.[21]

During this same period, Baxter gave notice of his intent to leave Parallel.[22]  A few days later, Baxter became an independent contractor for Parallel and began conducting research in DeRisi's UCSF lab.[23]  Unbeknownst to Parallel, both as an employee and as a contractor, Baxter shared Parallel confidential information with DeRisi, plagiarized Parallel's confidential work and did not report DeRisi's true intentions.[24]

Parallel then discovered a journal article by Baxter and DeRisi titled "Programmable microfluidic synthesis of spectrally encoded microspheres" in the journal *Lab on a Chip*.[25]  The paper plagiarized key elements of Parallume that Parallel previously shared.[26]  The heart of the article teaches the use of combinations of multiple rare earth downconverter emitter materials to spectrally encode beads in order to multiplex biological assays in a ratiometric manner.[27]  The materials identified are none other than Parallume beads Parallel supplied in confidence.[28]  The article also stated that the underlying research was supported by the Keck Foundation.[29]

---

[20] *See id.* at ¶ 36.

[21] *See id.*

[22] *See id.* at ¶ 39.

[23] *See id.* at ¶¶ 39-40.

[24] *See id.* at ¶¶ 49-51.

[25] *See id.* at ¶ 41.

[26] *See id.* at ¶ 43.

[27] *See id.* at ¶ 42.

[28] *See id.* at ¶¶ 42-43.

[29] *See id.* at ¶ 44.

4

United States District Court
For the Northern District of California

1
2
3
4

This dispute then ensued.  Parallel sent letters to DeRisi and Baxter offering to settle the dispute if they retracted the paper.[30]  But UCSF, on behalf of DeRisi and Baxter, refused.[31]  Baxter, DeRisi and UCSF now offer commercial licenses through the University website to use Parallume-derived technology as described in the paper.[32]

**B.**   **Parallel's Complaint**

Parallel's FAC alleges (1) breach of fiduciary duty, (2) aiding and abetting breach of duty, (3) intentional fraud, (4) false advertising and unfair competition under the Lanham Act, (5) false advertising, (6) unfair competition and (7) misappropriation of trade secrets.[33]

## II. LEGAL STANDARDS

**A.**   **Motion to Dismiss**

A complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief."[34]  If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[35]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36]  Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[37]  Dismissal without leave to

---

[30] *See id.* at ¶¶ 45-46.

[31] *See id.* at ¶¶ 47-48.

[32] *See id.* at ¶¶ 49-52.

[33] *See* Docket No. 33.

[34] Fed. R. Civ. P. 8(a)(2).

[35] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[37] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

5

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

amend is appropriate if it is clear that the complaint could not be saved by amendment such as after a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed."[38]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[39]  The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[40]  However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[41]

**B.     Request for Judicial Notice**

The court may take judicial notice of a "fact that is not subject to reasonable dispute because it is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[42]

**C.     Fed. R. Civ. P. 9(b)**

Under Rule 9(b), a plaintiff must state "with particularity the circumstances constituting fraud" which requires "statements regarding the time, place, and nature of the alleged fraudulent activities."[43]  "Mere conclusory allegations of fraud are insufficient."[44]  To satisfy Rule 9(b)'s heightened standard, allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

---

[38] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[39] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[40] *See id.* at 1061.

[41] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[42] Fed. R. Evid. 201(b).

[43] *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994).

[44] *Id.*

6

United States District Court
For the Northern District of California

against the charge and not just deny that they have done anything wrong."[45]  This includes "the

who, what, when, where, and how of the misconduct charged."[46]  A plaintiff also must allege

"what is false or misleading about a statement, and why it is false."[47]  "A court may dismiss a

claim grounded in fraud when its allegations fail to satisfy [Rule] 9(b)'s heightened pleading

requirements."[48]

**D.    Eleventh Amendment Sovereign Immunity**

Under the Eleventh Amendment to the United States Constitution, "[t]he judicial power of

the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by citizens of another state, or by citizens or subjects of

any foreign state."[49]  "[A]n unconsenting State is [accordingly] immune from suits brought in

federal courts by her own citizens as well as by citizens of another State."[50]

## III. DISCUSSION

**A.    Judicial Notice of the University's Program Guidelines and Patent Policy**

Parallel requests that the court take judicial notice of technology transfer program

guidelines and the patent policy as posted on the University of California websites.[51]  Defendants

have not objected, although they declare in their reply brief that "the documents are irrelevant as to

the intellectual property at issue."[52]  Because the documents' authenticity is not in dispute and may

---

[45] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[46] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted).

[47] *GlenFed*, 42 F.3d at 1548.

[48] *Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1064 (E.D. Cal. 2010).

[49] Eleventh Amendment to the U.S. Constitution.

[50] *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

[51] *See* Docket No. 46.

[52] *See* Docket No. 48.

Case No. 5:13-cv-05968-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

be verified by resort to the public record,[53] the court takes judicial notice of the guideline and patent policy webpages, although it will not rely on facts contained within the documents that reasonably may be subject to dispute,.

## B.   Breach of Duty of Loyalty as to Baxter

Parallel first alleges Baxter breached his duty of loyalty by colluding with DeRisi and copying Parallel's confidential information on Parallume both as an employee and while working for Parallel as an independent contractor.[54]   Breach of the duty of loyalty requires "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach."[55]   Because Parallel adequately alleges damages and there is no real dispute that collusion and plagiarism can constitute breaches of a duty to be loyal, the only issue here is whether Parallel has adequately alleged that Baxter owed any duty.

There is no dispute that while Baxter was an employee of Parallel he owed Parallel a duty of loyalty.[56]   Baxter's actions while he was an employee are therefore sufficiently alleged.   The FAC also alleges that Baxter's post-employment actions are fair game because his duty of loyalty continued through his work for Parallel as an independent contractor.[57]   Less important than the "independent contractor" label are the substance of the role and the scope of responsibility.   "[O]ne who contracts to act on behalf of another and subject to the others' control except with respect to

---

[53] *See* Fed. R. Evid. 201(b).

[54] *See* Docket No. 33 at ¶ 41 (alleging that "significant portions of [the plagiarized paper] were prepared by Baxter and DeRisi while Baxter was still actively providing services to Parallel as an employee or otherwise as a consultant.").

[55] *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007).

[56] *See id.* at 414 ("[A]n employee, while employed, owes undivided loyalty to his employer.").

[57] *See* Docket No. 33 at ¶ 39.

Case No. 5:13-cv-05968-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

his physical conduct is an agent and also an independent contractor."[58]  It is well-established law

that a principal-agent relationship gives rise to an actionable claim for breach of duty of loyalty.[59]

While Baxter's consulting relationship with Parallel may have been described as an

independent contractor agreement, as alleged the characteristics of Baxter's position did not change

from those of his position as an employee: "Baxter continued to provide services to the company

by further developing the company's proprietary imaging and analysis software and contacting

vendors on the company's behalf. . . . Baxter continued to have unrestricted access to his company

computer and email account, Parallel's office and facilities, and sensitive company information."[60]

Parallel's degree of control and Baxter's level of access suggests that even in his capacity as an

independent contractor, Baxter was an agent that owed a fiduciary duty of loyalty to Parallel.[61]

While the merits of Parallel's allegations remain to be determined, the allegations that

Baxter's duty continued even as he continued to collude and ultimately plagiarize Parallel's trade

secrets are sufficient to render Parallel's claim plausible.  While Defendants characterize these

allegations as mere legal conclusions, the court is satisfied Parallel lays out sufficient facts of the

---

[58] *Penthouse Int'l, Ltd. v. Barnes*, 792 F.2d 943, 947 (9th Cir. 1986).

[59] *See Huong*, 150 Cal. App. 4th at 410-11.

[60] Docket No. 33 at ¶ 39.

[61] *Cf. U.S. v. Milovanovic*, 678 F.3d 713, 724-25 (9th Cir. 2012) ("Privately agreed upon 'employment labels,' like the 'independent contractor' . . . may bring some employment relationships within the sphere of agency status but they do not necessarily squeeze all other employment relationships out of that sphere.") (emphasis omitted); *see* Restatement (Third) of Agency § 1.02 (2006) ("Whether a relationship is characterized as agency in an agreement between parties in the context of industry or popular usage is not controlling.").

Moreover, "Baxter's independent contractor agreement with Parallel contains industry-standard confidentiality and non-disclosure provisions regarding the company's confidential information and remains in effect to this day."  Docket No. 33 at ¶ 39.  Even absent a determination of principal-agent relationship, Baxter is bound by the terms of this agreement.

Case No. 5:13-cv-05968-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1  scheme to nudge Parallel's claim "across the line from conceivable."[62]  Parallel has therefore

2  adequately pleaded its breach of duty of loyalty claim, rendering dismissal unwarranted.

3  **C.      Aiding and Abetting Breach of Duty of Loyalty as to DeRisi[63]**

4          Second, Parallel alleges that DeRisi aided and abetted Baxter in breaching his duty of

5  loyalty.

> Liability may . . . be imposed on one who aids and abets the commission of an
> intentional tort if the person (a) knows the other's conduct constitutes a breach of
> duty and gives substantial assistance or encouragement to the other to so act or
> (b) gives substantial assistance to the other in accomplishing a tortious result and
> the person's own conduct, separately considered, constitutes a breach of duty to the
> third person.[64]

10  The central issue here is whether Parallel has sufficiently alleged that DeRisi knew or had reason to

11  know that Baxter was in breach of his duty of loyalty by sharing Parallel's confidential

12  information.

13          While it is true that while Baxter was an employee of Parallel, Parallel voluntarily provided

14  samples of its Parallume beads to DeRisi, DeRisi was still on notice that any information that

15  Baxter may have provided outside the scope of that sanctioned by Parallel—based on what Parallel

16  alleges were false promises—would have been improper.  The FAC sufficiently pleads that Baxter

17  and DeRisi colluded while Baxter was a Parallel employee, rendering it plausible that DeRisi knew

18  at that time that Baxter owed a duty of loyalty to Parallel.

19          Following Baxter's transition into an independent contractor position, it is less than clear

20  from the FAC that DeRisi had the requisite knowledge about Baxter's continued duty.  DeRisi is

21  alleged to have received aid from Baxter after he became a Parallel independent contractor, but

---

[62] *Twombly*, 550 U.S. at 547.

[63] Parallel does not dispute that the aiding and abetting claim should be dismissed as to UCSF, the Board of Regents, the Individual Regents and Hawgood in its opposition brief.  The second cause of action therefore is dismissed as to USCF, the Board of Regents, the Individual Regents and Hawgood.

[64] *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005).

10

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Parallel has failed to sufficiently allege that DeRisi knew or had reason to know Baxter's duty

continued beyond his time as a Parallel employee.  Mere speculation about "industry-standard"

confidentiality provisions in Baxter's agreement is not enough.

      The net of all this is that the court denies the motion to dismiss as to aiding and abetting the

breach while Baxter was a Parallel employee and grants the motion to dismiss as to aiding and

abetting the breach while Baxter was an independent contractor.

**D.**    **Intentional Fraud as to Baxter and DeRisi**[65]

      Third, Baxter and DeRisi challenge Parallel's intentional fraud claim.  "Under California

law, the indispensable elements of a fraud claim include a false representation, knowledge of its

falsity, intent to defraud, justifiable reliance, and damages."[66]  For promissory fraud—the

particular species of intentional fraud alleged here—the complaint must allege that the defendant

made a promise and that the promise was false.  Only the promise itself must be pleaded with

specificity; as to the intent of the promise, "the only necessary averment is the general statement

that the promise was made without the intent to perform it, or that the defendant did not intend to

perform it."[67]

      Baxter and DeRisi characterize Parallel's fraud claim as predicated on two alleged

misrepresentations:

    (1) DeRisi represented to Parallel that he was asking for confidential information and
        Parallume bead samples for the purposes of applying for a Keck Foundation grant, for
        which Parallel would be a subcontractor;[68] and

---

[65] Parallel concedes in its opposition brief that the intentional fraud claim can only appropriately be brought as to Baxter and DeRisi.  The third cause of action therefore is dismissed as to USCF, the Board of Regents, the Individual Regents and Hawgood.

[66] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (quotations and citations omitted).

[67] *See Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060 (2012); *see also Valencia v. Sharp Elecs. Corp.*, Case No. 12-16044, 2014 U.S. App. LEXIS 4212, at *5 (9th Cir. Mar. 6, 2014).

[68] *See* Docket No. 33 at ¶ 71.

11

Case No. 5:13-cv-05968-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

1

(2) DeRisi represented to Parallel that the confidential information and Parallume bead samples were necessary to cement a technology development relationship with Parallel for which DeRisi was obtaining investor funding.[69]

2

3

Reduced down, DeRisi's core alleged misrepresentation was his intended use of Parallel's

4

confidential information and his purported intent to include Parallel in the Keck Foundation grant.

5

Focusing on the allegations of emails that request subcontractor quotes[70] in connection with

6

the Keck Foundation grant that clearly suggest a partnership[71] following the grant award, Parallel

7

has pleaded sufficient facts to suggest that DeRisi made false representations to Parallel, with

8

knowledge of their falsity and the intent to defraud Parallel.  Parallel also alleges that it would not

9

have released the information and samples to DeRisi absent reliance on DeRisi's representations

10

that Parallel would be included in the Keck Foundation grant and the ensuing projects.  Parallel

11

thus sufficiently alleges that it justifiably relied on DeRisi's fraudulent misrepresentations about his

12

intentions and subsequently suffered damages in the form of loss of confidential information,

13

misappropriated technology and losses associated with the University's licensing scheme of

14

Parallel's product.

15

As to Baxter, although there are no emails alleged that explicitly point to his collusion with

16

DeRisi to intentionally defraud Parallel, the allegations that he was in cahoots with DeRisi

17

throughout the entire operation is adequate to permit this claim to go forward at the 12(b)(6)

18

stage.[72]

19

20

---

[69] *See id.*

[70] *See, e.g.*, *id.* at Exhibit B ("I expect this to be a 2-3 year project. . . . As a subcontractor to make the encoded beads, how much do you think it would cost, including personnel and supply?").

[71] *See id.* at Exhibit C:

Down to the wire, I submitted my two page proposal to Keck pitching the idea . . . . We probably will not hear whether we are invited for a full proposal for a while . . . .  I am fairly confident . . . that we will be asked to do a full app.  So, generating some basic image data for the grant would be a good idea now.

[72] *See id.* at ¶ 20, 57-58.

12

1

2

3

      In sum, although the court cannot say whether Parallel will ultimately prevail on its fraud claim, dismissal as to the Keck Foundation misrepresentation at the pleading stage is not warranted.

4

5

6

7

8

9

10

11

12

      As to the allegations of misrepresentations about the large private financial backer interested in funding DeRisi,[73] Parallel has not pleaded facts sufficient to overcome the heightened pleading standard of Rule 9(b).  In particular, while the FAC alleges that DeRisi claimed he had a large private financial backer that was interested in funding a project to develop technology in partnership with Parallel regarding disease surveillance, Parallel fails to identify who the financial backer was, when the alleged inquiries took place, or what the parameters of the proposed partnership were alleged to be.[74]  Defendants' motion to dismiss as to this misrepresentation is granted.

13

**E.      False Advertising and Unfair Competition as to All Defendants**

14

15

16

17

      Fourth, Parallel alleges that Baxter, DeRisi, UCSF, the Board of Regents, the Individual Regents, and Hawgood all engaged in false advertising in violation of the Lanham Act.  A false advertising claim under 15 U.S.C. § 1125(a) requires:

18

19

20

> (1) a false statement of fact in a commercial advertisement about a product; (2) the statement actually deceived substantial segment of its audience; (3) the deception is material; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement.[75]

21

22

As to Baxter and DeRisi, although they contend that that they do not compete commercially with Parallel, they are all alleged to advertise for and sell licenses for the same Parallume technology.

23

24

---

25

[73] *See id.* at ¶¶ 24-25.

26

[74] *See id.* at ¶ 24.

27

28

[75] *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 967 F. Supp. 2d 1347, 1365 (N.D. Cal. 2013).

Case No. 5:13-cv-05968-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

They therefore are sufficiently alleged to be in direct competition with each other.[76]  Even if Parallel, Baxter and DeRisi are somehow only indirect competitors, as long as the FAC "allege[s] commercial injury based upon a misrepresentation about a product," the claim is viable under the Lanham Act.[77]  Parallel has adequately pleaded that Baxter and DeRisi's licensing of Parallume technology and their contention that they—and not Parallel—are the inventors and owners of the technology has harmed or is likely to harm Parallel's sales of the technology by discrediting Parallel's own claims that it is the true owner and inventor of the technology.[78]  Accordingly, dismissal as to DeRisi and Baxter is inappropriate.

As to UCSF, the Board of Regents, the Individual Regents, and Hawgood, because of their relation to the state of California, they are entitled to a consideration of sovereign immunity.  The court concludes that the state-related defendants are entitled to sovereign immunity and dismisses the parties, as explained below.

   a.   11th Amendment Sovereign Immunity

The Eleventh Amendment prohibits suits against a state and its agencies for legal or equitable relief.[79]  "[T]he University of California and the Board of Regents are considered to be instrumentalities of the state for purposes of the Eleventh Amendment."[80]  An entity that

---

[76] *Cf. PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 124-25 (2d Cir. 1984) (holding that the owner of royalty streams from a music recording had standing to sue a distributor of falsely labeled music recordings).

[77] *See Jack Russell Terrier Network v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 n. 19 (9th Cir. 2005).

[78] *See* Docket No. 33 at ¶ 78; s*ee PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 932 (9th Cir. 2010) ("[A] false advertising cause of action under the [Lanham] Act is not limited to literal falsehoods; it extends to false representations made by implication or innuendo." (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990))).

[79] *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).

[80] *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982); *see also Mitchell v. Los Angeles Community College District*, 861 F.2d 198, 201 (9th Cir. 1988) ("California cases demonstrate that California state colleges and universities are dependent instrumentalities of the state" and therefore protected by the Eleventh Amendment.).

Case No. 5:13-cv-05968-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

establishes itself as an instrumentality of the state is entitled to sovereign immunity unless

Congress has explicitly abrogated sovereign immunity in exercising its power to enforce through

the Fourteenth Amendment or the state has waived its sovereign immunity by consenting to suit.[81]

Parallel argues that Congress abrogated state sovereign immunity claims brought under

Section 43(a) of the Lanham Act through its enactment of the Trademark Remedy Clarification Act

("TRCA").[82]  While the "Lanham Act may well contain provisions that protect constitutionally

cognizable property interests—notably, its provisions dealing with infringement of trademarks,

which are the property of the owner because he can exclude others from using them[,]" ultimately,

"the hallmark of a protected property interest is the right to exclude others[,]" and the "Lanham

Act's false-advertising provisions . . . bear no relationship to any right to exclude."[83]  The right to

be free from a business competitor's false advertising about its own product does not qualify as a

property right outside the scope of abrogation under Section 43(a).[84]  Parallel's attempt at

narrowing the scope of this holding to Lanham Act false advertising claims in which the defendant

is alleged to have made false statements about its own products as opposed to false statements

about another's products is unavailing.  Parallel offers no reason why it would be appropriate to

abrogate state sovereign immunity in the latter case and not in the former.  As a result, the Lanham

---

[81] *See College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669 (1999).

[82] *See id.* at 670:

> The TRCA amends  43(a) by defining 'any person' to include 'any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. . . . The TRCA further amends the Lanham Act to provide that such state entities 'shall not be immune, under the eleventh amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court by any person, including any government or nongovernmental entity for any violation under this Act.'

[83] *Id.* at 673.

[84] *See id.* at 672.

15

Case No. 5:13-cv-05968-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1    Act claims against UCSF, the Board of Regents, the Individual Regents and Hawgood are

2    dismissed.

3              b.   *Ex Parte Young*

4          The Individual Regents and Hawgood contend that they are entitled to sovereign immunity

5    as to Parallel's claims for prospective relief.  "The State has no power to impart to [its officer] any

6    immunity from responsibility to the supreme authority of the United States.  This exception applies

7    only to prospective relief; it does not permit retroactive injunctive relief."[85]  To avoid *Ex Parte*

8    *Young*, in making its claim, Parallel must therefore allege a sufficient nexus between the named

9    official and the enforcement of the act.  In particular, "[w]hen a violation of federal law is alleged

10   . . . the state official whose actions violate that law is the rightful party to the suit and prospective

11   injunctive relief can only be had against him."[86]  Under this logic, it is the state official who

12   authorized the licensing of Parallume technology and its posting to the UCSF website, and not his

13   or her supervisors—however far up the chain—who could properly be subjected to suit.  While

14   Parallel argues that the Individual Regents are the owners of the intellectual property of the

15   University and are therefore the correct individuals against whom to direct the claim, Parallel has

16   failed to plead sufficient facts to establish that the Individual Regents and Hawgood had a

17   sufficient nexus to the false advertising to sustain a claim against them under *Ex Parte Young*.  The

18   Lanham Act claims against the Individual Regents and Hawgood also are dismissed.

---

[85] *Ex Parte Young*, 209 U.S. 123, 156 (1908); *see also Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 840 (9th Cir. 1997) ("[T]he Eleventh Amendment allows only prospective injunctive relief to prevent an ongoing violation of federal law.").

[86] *Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1342 (Fed. Cir. 2006):

> Allegations that a state official directs a University's patent policy are insufficient to causally connect that state official to a violation of federal patent law—i.e., patent infringement.  A nexus between the violation of federal law and the individual accused of violating that law requires more than simply a broad general obligation to prevent a violation; it requires an actual violation of federal law by that individual.  The fact that a University Official has a general, state-law obligation to oversee a University's patent policy does not give rise to a violation of federal patent law. (citations omitted)

16

Case No. 5:13-cv-05968-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### F.     False Advertising, Cal. Bus. & Prof. Code § 17500 as to Baxter and DeRisi[87]

Fifth, Parallel brings a false advertising claim against Baxter and DeRisi under California Business and Professional Code § 17500.  While Defendants counter that Baxter and DeRisi are not in a position to provide any relief to Parallel because it is UCSF and not Baxter and DeRisi that control what information is posted on its website, Parallel contends that Baxter and DeRisi can be enjoined from further claiming ownership or inventorship of Parallume technology and can be compelled to retract any claims made in their paper asserting the same.  Because it is alleged that the University posted these claims to ownership and inventorship based on assertions made in the paper itself, Parallel has sufficiently pleaded facts as to Baxter and DeRisi to make dismissal inappropriate.[88]

### G.     Unfair Competition, Cal. Bus. & Prof. Code § 17200 as to Baxter and DeRisi[89]

Sixth, California's UCL provides a private cause of action for users who are harmed by unfair, unlawful or fraudulent business practices.[90]  Parallel pleads its claim primarily under the fraudulent prong.[91]  As Parallel has pleaded facts sufficient to preserve its intentional fraud claim thus meeting Rule 9(b)'s heightened pleading standards, those same facts similarly prevent dismissal of its UCL claim.[92]

---

[87] Parallel does not dispute that the state false advertising claim should be dismissed as to UCSF, the Board of Regents, the Individual Regents and Hawgood in its opposition brief.  The fifth cause of action therefore is dismissed as to USCF, the Board of Regents, the Individual Regents and Hawgood.

[88] *See* Docket No. 33 at ¶¶ 58, 67, 99.

[89] Parallel does not dispute that the state unfair competition claim should be dismissed as to UCSF, the Board of Regents, the Individual Regents and Hawgood in its opposition brief.  The sixth cause of action therefore is dismissed as to USCF, the Board of Regents, the Individual Regents and Hawgood.

[90] *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

[91] *See* Docket No. 33 at ¶¶ 90-92.

[92] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s particularity requirement applies to . . . state-law causes of action [like the UCL].  In fact, we have specifically

17

United States District Court
For the Northern District of California

### H.   Misappropriation of Trade Secrets as to Baxter and DeRisi[93]

Seventh, Parallel brings a misappropriation claim against Baxter and DeRisi.  To state a cause of action for misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), a plaintiff must plead the existence of a trade secret and misappropriation of that trade secret.[94]  The CUTSA defines "misappropriation" as the

> (1) [a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) [d]isclosure or use of a trade secret of another without express or implied consent by a person who . . . [u]sed improper means to acquire knowledge of the trade secret.[95]

The primary issue is whether the means by which Baxter and DeRisi came by Parallume technology were proper.  As the court has already determined that Parallel has pleaded facts sufficient to go forward with the underlying claims of breach of duty of loyalty and aiding and abetting breach of duty of loyalty, the question of misappropriation must also be allowed to go forward on the same basis.

Baxter and DeRisi further contend that Parallel has failed to plead sufficient facts identifying the trade secret itself that was allegedly misappropriated.  Specifically, they argue that disclosure of trade secrets in a patent application extinguishes the element of secrecy associated with the information because it places it in the public domain.[96]  Parallel counters that its patent application does not include the specific information about its Parallume technology at issue in this

---

ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL.").

[93] Parallel does not dispute that the misappropriation of trade secrets claim should be dismissed as to UCSF, the Board of Regents, the Individual Regents and Hawgood in its opposition brief.  The seventh cause of action therefore is dismissed as to USCF, the Board of Regents, the Individual Regents and Hawgood.

[94] See AccuImage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) (citing Cal. Civ. Code § 3426.1(b)).

[95] Cal. Civ. Code § 3426.1(b)(1)-(2).

[96] See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp., 587 F.3d 1339, 1355 (Fed. Cir. 2009).

18

case and therefore does not disclose proprietary information.  Where a patent application does not

contain specific details about the product seeking to be protected, that information remains a trade

secret and is not considered to be within the public domain.[97]  Parallel therefore pleads sufficient

facts to identify which trade secrets fall within its claim for misappropriation to survive a Rule

12(b)(6) challenge.[98]

### IV. CONCLUSION

Because Parallel does not dispute that all causes of action other than the Lanham Act claim

should be dismissed as to UCSF, the Board of Regents, the Individual Regents and Hawgood,

Defendants' motion to dismiss these Defendants is granted without leave to amend as to causes of

action 1, 2, 3, 5, 6 and 7.

Defendants' motion to dismiss is denied as to the claims for: (1) breach of fiduciary duty as

to Baxter, (2) aiding and abetting breach of duty as to DeRisi while Baxter was a Parallel

employee, (3) intentional fraud by Baxter and DeRisi as to the Keck Foundation representations,

(4) false advertising and unfair competition under the Lanham Act as to Baxter and DeRisi,

(5) false advertising as to Baxter and DeRisi, (6) unfair competition as to Baxter and DeRisi and

(7) misappropriation of trade secrets as to Baxter and DeRisi.

---

[97] *See Henry Hope X-Ray Prods., Inc. v. Marron Carrell, Inc.*, 674 F.2d 1336, 1342 (9th Cir. 1982).

[98] *See* Docket No. 33 at ¶ 95:

> The Proprietary Material that Parallel has developed include, but are not limited to, micromachined silicon tools, devices and substrates for protein crystallization, optical encoding technology for assay multiplexing, knowledge regarding the selection and optimal composition of host materials, rare earth phosphors, and rare earth emitters, inkjet printing processes for forming and fabricating Parallume-encoded beads, and optical instrumentation, kits and protocols.

This ruling is without prejudice to a demand by Defendants for a further delineation of the trade secrets claims pursuant to Cal. Civ. Code § 2019.

Case No. 5:13-cv-05968-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1    Defendants' motion to dismiss is granted with leave to amend as to: (1) aiding and abetting

2   breach of duty during Baxter's term as an independent contractor and (2) the intentional fraud

3   claim regarding the large private financial backer.

4    Finally, Defendants' motion to dismiss UCSF, the Board of Regents, the Individual Regents

5   and Hawgood as to cause of action 4 is granted on sovereign immunity grounds with leave to

6   amend.

7    Any amended complaint shall be filed within 14 days.

8   **IT IS SO ORDERED.**

9   Dated: September 23, 2014

10

11   _____
     PAUL S. GREWAL
12   United States Magistrate Judge

Case No. 5:13-cv-05968-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

United States District Court
For the Northern District of California