GRELLAS SHAH LLP
GEORGE GRELLAS, ESQ. (SBN 83540)
(gg@grellas.com)
DHAIVAT H. SHAH, ESQ. (SBN 196382)
(ds@grellas.com)
DAVID I. SIEGEL, ESQ. (SBN 264247)
(dsiegel@grellas.com)
LORETTA M. HICKS, ESQ. (SBN 280659)
(lh@grellas.com)
20400 Stevens Creek Blvd, Suite 280
Cupertino, CA 95014
Telephone: (408) 255 - 6310
Facsimile: (408) 255 - 6350

Attorneys for Plaintiff
PARALLEL SYNTHESIS TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARALLEL SYNTHESIS TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH DERISI; BRIAN BAXTER; JIM KIRIAKIS, in his official capacity; KARIN IMMERGLUCK, in her official capacity; DAN ABEL, in his official capacity; DAVID FUNG, in his official capacity; DEBBIE ALEXANDER, in her official capacity; ELLEN S. KATS, in her official capacity; GONZALO BARRERA-HERNANDEZ, KRISTIN AGOPIAN, in her official capacity; SUNITA RAJDEV, in her official capacity; and TODD PAZDERA, in his official capacity.<br><br>Defendants | Case No.: C13-05968 PSG<br><br>THIRD AMENDED COMPLAINT FOR:<br>1) BREACH OF DUTY OF LOYALTY;<br>2) AIDING AND ABETTING BREACH OF DUTY OF LOYALTY;<br>3) INTENTIONAL FRAUD;<br>4) FALSE ADVERTISING AND UNFAIR COMPETITION UNDER THE LANHAM ACT;<br>5) FALSE ADVERTISING;<br>6) UNFAIR COMPETITION; AND<br>7) MISAPPROPRIATION OF TRADE SECRETS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Parallel Synthesis Technologies, Inc., hereby complains and alleges on personal knowledge as to matters relating to itself, and on information and belief as to all other matters against defendants, and each of them, as follows:

**THE PARTIES**

1. Plaintiff Parallel Synthesis Technologies, Inc. ("Parallel") is a corporation registered in the State of California and headquartered in Santa Clara, California.

2. Upon information and belief, based on publicly available information, the following defendants, each of who is sued in his or her official capacity, is an employee of the University of California, San Francisco ("UCSF") Office of Innovation, Technology and Alliances, and each is directly involved in the advertising and licensing of technology allegedly developed by UCSF employees, specifically including the Parallel technology advertised for license by defendants as alleged in this Complaint (the "Licensing Officials"): Jim Kiriakis, Karin Immergluck, Dan Abel, David Fung, Debbie Alexander, Ellen S. Kats, Gonzalo Barrera-Hernandez, Kristin Agopian, Sunita Rajdev, Todd Pazdera. UCSF, the Board of Regents of the University of California and the Licensing Officials shall be collectively referred to herein as "UC."

3. Defendant Joseph DeRisi ("DeRisi") is an employee of and professor at UCSF and, upon information and belief, resides in San Francisco, California.

4. Defendant Brian Baxter ("Baxter") is an employee of UCSF and, upon information and belief, resides in Santa Clara, California.

**JURISDICTION**

5. This Court has subject matter jurisdiction over the federal false advertising and unfair competition claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

6. Supplemental jurisdiction over the state law claims is appropriate under principles of supplemental jurisdiction, 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over defendants because all defendants are domiciled in the State of California.

## VENUE

8. Venue is proper in this district and division pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400 because Parallel resides in this district and division, a substantial part of the events and omissions giving rise to Parallel's claims occurred in this district and a substantial part of the property that is the subject of Parallel's claims is located in this district.

## BACKGROUND

9. For over 13 years, Parallel has developed and provided a variety of tools, devices and technologies, including, but not limited to micromachined silicon tools, devices and substrates for protein crystallization and optical encoding technology for assay multiplexing.

10. Among Parallel's most prized technological innovations is its Parallume™ platform, including Parallume encoded beads, optical instrumentation, kits and protocols. Parallel offers components of the Parallume platform commercially for sale, as well as services related thereto.

11. Parallel's rare earth-based Parallume optical encoding materials enable for the first time the multiplexing of arbitrarily large numbers of samples including assays based on nucleic acids or protein-antibody pairs or the multiplexed immunohistochemical staining of cells and tissues. A multiplexed assay refers to the simultaneous screening within a single container of a multicomponent target mixture against a large number of probes each of which gives information about a particular constituent or component of the target mixture. In essence, Parallel's Parallume technology makes it possible to analyze a particular mixture with a large number of different probes, each providing different information about a target mixture, rather than having to separately apply each probe to a separate container of the target material.

12. Parallume technology has important applications in biotechnology research and development, where it can be used to analyze nucleic acids and protein-antibody pairs. Among the benefits of this technology are reduced costs, less sample handling and increased speed in analyzing materials.

13. In addition to the tools, devices, and technologies identified above, Parallel has invested substantial resources in developing a range of proprietary methodologies, techniques, protocols, instrumentation, and knowledge in connection with, and in support of, such tools, devices, and technologies. These proprietary methodologies, techniques, protocols, instrumentation, and knowledge include, but are not limited to, specialized knowledge regarding the selection and optimal composition of the host materials and rare earth emitters comprising Parallume materials, specialized knowledge regarding the classes of rare earth phosphors usable for optical encoding, and proprietary inkjet printing processes for forming Parallume-encoded beads.

14. Parallel has spent $7 million dollars and over ten years developing Parallume related technology.

15. Parallel has also filed several patent applications pertaining to Parallume technology and has been funded with $6.02 million in the form of 12 grants related to the technology from the National Institutes of Health and the National Science Foundation between 2003 and 2011. The successful review and funding of the 12 grants, by dozens of scientists, engineers and professors, attests to the novelty and utility of the Parallume multiplexing platform.

16. On or about July 11, 2007, Parallel hired Baxter as a Senior Scientist. Prior to being hired by Parallel, Baxter had no experience working with rare earth phosphor materials, which are the foundation of the Parallume technology. As an employee of Parallel, Baxter owed a fiduciary duty of loyalty to the company.

17. As a Senior Scientist of Parallel, Baxter was provided with access to all aspects of Parallel's Parallume™ platform, as well as the proprietary tools, devices, technologies, methodologies, techniques, protocols, instrumentation, and knowledge developed by Parallel in connection with, and in support of, the Parallume™ platform. Through such exposure, Baxter gained an intimate knowledge of Parallel's Parallume™ platform and its related technology.

/ / /

18. In or about September 2008, DeRisi contacted Parallel to inquire about Parallume. Parallel's founder, Robert Haushalter ("Haushalter"), sent DeRisi a white paper regarding the technology. Such white paper contained general information regarding the Parallume technology, but did not disclose proprietary or otherwise confidential information regarding the technology. DeRisi quickly expressed interest in making use of Parallume in his own research, stating in a September 28, 2008 email, "I have some interesting ideas that could benefit from your beads." A true and correct copy of this e-mail is attached as **Exhibit A**.

19. At about this time, Parallel learned that DeRisi and Baxter had a prior relationship and had been friends since high school.

20. In furtherance of a potential relationship, Haushalter, Baxter, and an additional Parallel employee, Srinivas Vetcha, accepted DeRisi's invitations and visited UCSF to meet DeRisi and his team more than once to discuss the Parallume technology, the first visit being on or around October 2, 2008. In an email dated October 19, 2008, DeRisi followed up with Haushalter and Baxter regarding the Parallume encoded beads technology. Specifically, DeRisi explained he was in the process of submitting a preliminary proposal for a grant from the Keck Foundation and asked Parallel for assistance with the preparation of the grant application. DeRisi also stated that he wanted to budget Parallel into the grant as a subcontractor to create and supply Parallume encoded beads; even writing down rough estimates of the amount of encoded beads and different codes required by DeRisi to use over the next three years, if awarded the Keck Grant. A true and correct copy of this e-mail is attached hereto as **Exhibit B**.

21. DeRisi's Lab Manager, Tara Christiansen, sent an email to Haushalter and Baxter on October 21, 2008, stating that "Joe [DeRisi] wanted me to get a price quotation from Parallel-synthesis for the price of the encoded beads…We absolutely need this quotation in order to budget properly for this project."

22. On November 3, 2008, DeRisi sent an email to Haushalter and Baxter notifying them that he had submitted his initial proposal to the Keck Foundation, and while they wait to hear back, "to start playing around, I would like to obtain some small bead samples…Of

course, we would be happy to share all the image data with you, and you are welcome to hand out or use the microscopes here yourself." DeRisi went on to say that he was "fairly confident (but not 100%) that we will be asked to do the full app. So, generating some basic image data for the grant would be a good idea now." A true and correct copy of this e-mail is attached hereto as **Exhibit C**.

23. At the same time as DeRisi was making these representations regarding the Keck Foundation proposal, DeRisi also made additional representations regarding having potential separate private financial backing for a partnership with Parallel. On October 7, 2008, DeRisi sent an email to Haushalter, stating: "We potentially have another large private financial backer that is interested in funding us for tech development and disease surveillance, so this might be a separate opportunity to develop a low cost, fast, reliable system for in-country work. Sample prep, PCR steps, cost of goods, and subsequent read-out, analysis, and data storage/transmission all need attention, some of which we are already working on. I would be interested in meeting Ray to discuss the possibilities of piloting the MARS system." A true and correct copy of this email is attached hereto as **Exhibit D**.

24. In light of these representations from DeRisi, Parallel began disclosing additional information to DeRisi regarding the Parallume platform and related technologies. This included information regarding some of Parallel's proprietary tools, devices, methodologies, techniques, protocols, instrumentation, and knowledge.

25. In November 2008, DeRisi asked Parallel to provide sample Parallume beads for testing and imaging. Parallel employees took another trip to UCSF and provided these sample beads to DeRisi.

26. In December 2008 and January 2009, DeRisi wrote two letters of support for Haushalter and Parallel Technologies. In DeRisi's December 1, 2008, letter, DeRisi noted "[s]ince we are collaborating on studies using your optically encoded Parallume beads I am very familiar with Parallume's properties, uses and potential future applications." DeRisi further states that "[f]or a surprisingly large number of diverse assays and reactions it is clear that the Parallume encoding materials provide unique features, advantages and benefits that

place them in a class by themselves." A true and correct copy of this letter is attached hereto as **Exhibit E**.

27. In DeRisi's January 17, 2009, letter of support, DeRisi notes "the combination of the Parallel's PTR assay which detects unlabeled target DNA, the inexpensive MARS detector and the multiplexing depth provided by the Parallume material makes a particularly attractive combination to perform DNA or protein-based diagnostics in a low resource setting." A true and correct copy of this letter is attached hereto as **Exhibit F**.

28. On or about January 19, 2009, DeRisi informed Parallel that the Keck Foundation pre-proposal was positively received and that DeRisi had been asked to submit a full proposal. In an e-mail to Haushalter, DeRisi stated that "[t]his grant, if successful, will be mutually beneficial on multiple fronts."

29. Purportedly towards the goal of fleshing out the Keck Foundation proposal, DeRisi again asked Parallel for more sample Parallume beads for imaging. In a January 20, 2009, email to Haushalter and Baxter, DeRisi writes that "[i]t would be great for preliminary data to have examples of beads labeled with each of the 6 colors individually, and then some mixed 6 color codes." A true and correct copy of this e-mail is attached hereto as **Exhibit G**.

30. Twice more, DeRisi repeated the same request for sample beads in six different colors in emails sent on January 23 and January 27, 2009, inviting Haushalter and Baxter to come over up to the UCSF lab, saying "[w]e will image the beads we have now, but the other examples will be critical." A true and correct copy of this e-mail is attached hereto as **Exhibit H**.

31. On or about February 4, 2009, Parallel sent these additional bead samples to DeRisi, as requested, in reasonable reliance on DeRisi's representation that Parallel was being asked to provide the beads for the purpose of the Keck Foundation proposal, for which Parallel was to be included as a subcontractor. A true and correct copy of this e-mail is attached hereto as **Exhibit I**.

32. In or about July 2009, DeRisi asked Parallel for a letter of reference for the Keck Foundation grant.

33. In an August 2, 2009 email, DeRisi asked Haushalter and Baxter if "anyone ever published anything with your system? It would be nice if there was a citable reference."

34. On or about August 5, 2009, DeRisi expressed interest in Parallel's optical detection system, which Parallel refers to as the Multiplex Assay Reader System ("MARS"), which is designed to perform analyses relating to Parallel technology. In response to Haushalter's query about having a "quick conference call next week" regarding the MARS technology and other possible "SBIR/STTR stimulus grants," DeRisi affirmatively responded "[i]ndeed, let's discuss MARS and more next week, after the final turn-in or my grant." Parallel never heard from DeRisi again.

35. The Keck Foundation proposal was due on August 11, 2009, but DeRisi never informed Parallel about the status of the grant. This grant was subsequently funded and DeRisi received $1 million dollars from the Keck Foundation.

36. It has since become clear that DeRisi never had any intention of partnering with Parallel for the Keck Foundation grant, a business relationship funded by a large private financial backer or otherwise. But in reasonable reliance on DeRisi's fraudulent misrepresentations regarding the reasons he was asking for information about Parallume technology and sample Parallume beads, Parallel had agreed to provide such information and samples, believing, based on DeRisi's representations, that Parallel was going to be both working with DeRisi as well as benefiting from the Keck Foundation grant funds, if the grant was awarded to DeRisi.

37. On November 6, 2009, Baxter gave a presentation in association with Parallel regarding Parallel's Parallume multiplexing technology platform at a 2009 Detection Technologies conference. Baxter has a video of the presentation, as it was recorded at the conference. Multiple items that are mentioned and discussed in Baxter's presentation are directly related to and correspond with issues addressed in a paper later published by both DeRisi and Baxter in November 2012, discussed below. In particular, Baxter's presentation included a discussion of incorporating Parallume into polymer beads – specifically beads that are curiously similar to the polymer beads addressed in the paper discussed below.

38. On or about May 12, 2011, Baxter gave notice of his intent to leave Parallel as a full-time employee and ceased employment on June 3, 2011. On June 7, 2011, Baxter entered into an independent contractor agreement with Parallel, whereby he continued to act as a consultant to Parallel. As a consultant to Parallel, Baxter continued to provide services to the company by further developing the company's proprietary imaging and analysis software. Baxter also contacted vendors on Parallel's behalf and acted as its representative. Such services continued to be provided into 2012. During such time, Baxter continued to have unrestricted access to his company computer and email account, Parallel's office and facilities, and sensitive company information. As a consultant, Baxter continued to owe a fiduciary duty of loyalty to Parallel. Baxter's independent contractor agreement with Parallel contains industry-standard confidentiality and non-disclosure provisions regarding the company's confidential information, and remains in effect to this day.

39. While acting as a consultant of Parallel, Baxter became a researcher in DeRisi's lab at UCSF on or about July 2011. Upon information and belief, DeRisi knew or had reason to know that Baxter continued to have duties of loyalty to Parallel. Baxter was not only employed by DeRisi, but was a long-time friend of DeRisi since high school. Given their close relationship, both professional and personal, and the fact that DeRisi and Baxter, as discussed below, made significant use of Parallel technology as part of their business relationship, DeRisi knew or should have known that Baxter had continuing duties of confidentiality as a contractor of Parallel. In addition, DeRisi has significant experience in the technology research industry and, as such, had ample reason to be aware that Parallel would require its contractors to adhere to standard confidentiality provisions.

40. In November 2012, Parallel discovered an article entitled "Programmable microfluidic synthesis of spectrally encoded microspheres," published in *Lab on a Chip* (2012, 12, 4716-4723), (the "Paper"). Baxter and DeRisi are listed as authors on the Paper with DeRisi as the primary author responsible for correspondence concerning the Paper. Upon

/ / /

/ / /

information and belief, significant portions of this Paper were prepared by Baxter and DeRisi while Baxter was still actively providing services to Parallel as an employee or otherwise as a consultant.

41. Parallel was disturbed to say the least. The central tenet of the Paper was to use combinations of multiple rare earth downconverter emitter materials to spectrally encode beads in order to multiplex biological assays in a ratiometric manner. The multiple rare earth downconverter emitter materials identified in the Paper are exactly the Parallume materials that Parallel developed and offered for sale, that Baxter was made privy to as an employee of Parallel, and that DeRisi was provided in confidence under the fraudulent guise of a his proposed partnership with Parallel.

42. The Paper plagiarized key elements of Parallume technology specifically developed by Parallel years earlier that were shared in confidence with both Baxter and DeRisi. That DeRisi chose to plagiarize Parallel's technology was particularly surprising to Parallel, given that he teaches a class on research ethics at UCSF which discusses scientific misconduct.

43. Even more shocking is the fact that the Paper reveals that DeRisi had received the funding he had been applying for from the Keck Foundation and claims the research underlying the Paper was supported by the Keck Foundation grant. This is surprising given that the main research purported in the Paper was merely plagiarized from Parallel's Parallume technology.

44. On June 21, 2013, Parallel sent a letter to DeRisi offering to settle this dispute if he retracted the Paper. A true and correct copy of the letter to DeRisi is attached hereto as **Exhibit J**.

45. On July 15, 2013, Parallel sent a letter offering the same settlement to Baxter. A true and correct copy of the letter to Baxter is attached hereto as **Exhibit K**.

46. UC's counsel replied on behalf of DeRisi and Baxter, stating that neither of them would retract the paper. But UC claimed that it would perform an internal investigation of the matter.

47. On October 22, 2013, UC's counsel's office e-mailed Parallel's counsel to state that it would not be taking any action regarding the Paper.

48. It has since become clear why UC would not retract plagiarized content published by its employees. Not content to plagiarize Parallel's Parallume technology, which DeRisi only became privy to under false pretenses and by fraudulently inducing Baxter to breach his fiduciary duty of loyalty to Parallel, Baxter, DeRisi and UC are now offering the Parallume technology plagiarized in the Paper through a commercial licensing scheme (the "Licensing Scheme"). More specifically, the Paper is posted on the UCSF "Technology, Innovation and Alliance" website ("UCSF Licensing website"), under the link "Available Technologies" - http://ita.ucsf.edu/available-technologies - where an interested third party can review all technologies available through USCF for licensing purposes. The Paper is used specifically to explain and advertise the possible uses for a technology that has been directly plagiarized from the Parallume technology. Attached hereto as **Exhibit L** is a true and correct copy of a UC website offering the Parallume technology for commercial license.

49. Upon information and belief, Baxter and DeRisi provided information regarding the plagiarized Parallume technology to UC, including the false representation that Baxter and DeRisi were the investors of such technology, for the purposes of commercially advertising the technology as part of the Licensing Scheme.

50. In addition, upon information and belief, pursuant to the University of California's technology transfer policies, DeRisi and Baxter stand to personally profit through royalties based on revenue earned by UC through the Licensing Scheme.

51. On the UCSF technology licensing website, UC, Baxter and DeRisi falsely advertise to the public that DeRisi and Baxter are "inventor[s]" of the technology plagiarized in the Paper. It further claims that UC has a "patent pending" for this technology. But because Baxter and DeRisi knowingly plagiarized the technology that they and UC are now licensing to any interested third parties, they know that they cannot obtain a patent for the Parallume technology. Moreover, potential licensees are falsely led to believe by UC's,

/ / /

Baxter's and DeRisi's advertising that UC is the original inventor and the only source of this technology and that UC has some ability, as the inventor, to limit the usage of the technology.

**FIRST CAUSE OF ACTION**
**Breach of Duty of Loyalty**
**(Against Baxter)**

52. Plaintiff hereby incorporates by references each and every allegation from paragraphs 1 through 51 of this Complaint as though said paragraphs were fully set forth herein.

53. From July 17, 2007, through June 12, 2011, Baxter was an employee of Parallel, and from June 7, 2011, through at least 2012, Baxter was a consultant of Parallel.

54. In such capacities, Baxter was made privy to vital confidential information regarding Parallel's Parallume technology.

55. As an employee and consultant of Parallel, Baxter acted as an agent of Parallel and therefore owed a fiduciary duty of loyalty to Parallel.

56. In breach of his duty of loyalty to Parallel, Baxter conspired with DeRisi and UC to defraud Parallel into sharing confidential information about its Parallume technology, as well as sample Parallume bead materials, under the guise of DeRisi and Parallel entering into a business relationship together.

57. Moreover, in breach of his duty of loyalty to Parallel, Baxter conspired with DeRisi and UC to publish plagiarized Parallel technology and offer such technology for sale, thereby deceptively holding themselves out to be owners of the technology.

58. As a direct and proximate result of Baxter's breaches of duty of loyalty as described above, Parallel has been damaged in an amount to be proven at trial

59. Plaintiff is informed and believes that Baxter's conduct in breaching his duty of loyalty to Parallel is malicious and oppressive, and constitutes deplorable conduct in conscious disregard of Parallel's rights. Plaintiff is therefore entitled to an award of exemplary and punitive damages.

WHEREFORE, Parallel prays for judgment as set forth below.

/ / /

**SECOND CAUSE OF ACTION**
**Aiding and Abetting Breach of Duty of Loyalty**
**Against DeRisi**

60. Plaintiff hereby incorporates by reference each and every allegation from paragraphs 1 through 59 of this Complaint as though said paragraphs were fully set forth herein.

61. From July 17, 2007, through June 12, 2011, Baxter was an employee of Parallel, and from June 7, 2011 through the present, Baxter was and continues to be a consultant of Parallel.

62. In such capacities, Baxter was made privy to vital confidential information regarding Parallel's Parallume technology.

63. As an employee and consultant of Parallel, Baxter acted as an agent of Parallel and therefore owed a fiduciary duty of loyalty to Parallel.

64. At all relevant times, DeRisi was aware that Baxter was an employee, consultant, and/or agent of Parallel. In specific, as alleged in paragraphs 18-42 above, DeRisi and Baxter conspired to defraud Parallel into sharing proprietary information and that DeRisi entered into this conspiracy with Baxter, despite knowing that Baxter owed a fiduciary duty of loyalty to Parallel as a Parallel employee. On information and belief, in and after June 2011, after Baxter had resigned as an employee of Parallel and continued to work as a Parallel contractor, DeRisi continued this conspiracy with Baxter to misappropriate and misuse Parallel's proprietary information, despite knowing that Baxter continued to have access to such proprietary information as a consultant of Parallel and being aware that Baxter continued to provide services to the company by further developing the company's proprietary imaging and analysis software and by contacting vendors on Parallel's behalf and acting as its representative.

65. Despite knowing Baxter was an employee, consultant, and/or agent of Parallel and owed a duty of loyalty to the company, DeRisi conspired with Baxter to defraud Parallel into sharing confidential information about its Parallume technology, as well as sample

/ / /

Parallume bead materials, under the guise of DeRisi and Parallel entering into a business relationship together.

66. Moreover, despite knowing Baxter was an employee, consultant, and/or agent of Parallel and owed a duty of loyalty to the company, DeRisi conspired with Baxter to publish plagiarized Parallel technology and offer such technology for sale, thereby deceptively holding themselves out to be owners of the technology.

67. As a direct and proximate result of DeRisi's aiding and abetting Baxter's breaches of duty of loyalty as described above, Parallel has been damaged in an amount to be proven at trial

68. Plaintiff is informed and believes that DeRisi's conduct in aiding and abetting Baxter's breaches of his duty of loyalty to Parallel is malicious and oppressive, and constitutes deplorable conduct in conscious disregard of Parallel's rights. Plaintiff is therefore entitled to an award of exemplary and punitive damages.

WHEREFORE, Parallel prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**
**Intentional Fraud**
**Against DeRisi and Baxter**

69. Plaintiff hereby incorporates by references each and every allegation from paragraphs 1 through 68 of this Complaint as though said paragraphs were fully set forth herein.

70. As alleged above, defendants made a number of consistently false representations and promises within correspondence to induce Parallel to divulge to DeRisi confidential information regarding Parallume technology and to provide samples of Parallume materials to DeRisi. Specifically, DeRisi represented to Parallel that he was asking for such confidential information and Parallume bead samples for the purposes of applying for a Keck Foundation grant, for which Parallel would be a subcontractor, as well as for a technology development relationship for which DeRisi was obtaining investor funding.

71. The foregoing representations and promises were false when made by defendants. The true facts are that DeRisi had no intention of including Parallel as a

subcontractor on the Keck Foundation grant and had no intention of entering into a technology development relationship with Parallel. This is further reinforced by the timeline of communications between DeRisi and Parallel: DeRisi communicated with Parallel under the guise of entering into a business and research relationship with Parallel, only long enough to gain the confidential information and bead samples DeRisi needed to apply for the Keck Foundation grant. Once DeRisi gained the information he needed, DeRisi abruptly stopped any communication with Parallel right before DeRisi received the grant. Instead, defendants induced Parallel to share its confidential information and valuable resources in order to plagiarize Parallel's technology, obtain outside funding based on the technology and license the technology as if it were developed by defendants.

72. Defendants' false representations and promises did in fact induce Parallel to divulge confidential information and provide valuable Parallume bead materials to DeRisi.

73. Parallel relied on these representations and promises and would not have taken these actions but for such representations and promises. Parallel's reliance was reasonable for many reasons. In particular, Baxter was a trusted employee of Parallel and had a prior relationship with DeRisi. In addition, DeRisi is a tenured professor at UCSF with a known research background.

74. As a direct and proximate result of defendants' fraud as described above, Parallel has been damaged in an amount to be proven at trial.

75. Plaintiff is informed and believes that defendants' conduct was malicious and oppressive, and constitutes deplorable conduct in conscious disregard of Parallel's rights. Plaintiff is therefore entitled to an award of exemplary and punitive damages.

WHEREFORE, Parallel prays for judgment as set forth below.

**FOURTH CAUSE OF ACTION**
**False Advertising and Unfair Competition, 15 U.S.C. § 1125(a)**
**Against All Defendants**

76. Plaintiff hereby incorporates by reference each and every allegation from paragraphs 1 through 75 of this Complaint as though said paragraphs were fully set forth herein.

77. Defendants' actions described above and specifically, without limitation, defendants' false and misleading advertising of the Paper and the plagarized on the UCSF Licensing website that DeRisi and Baxter are the inventors of the technology in the Paper and being offered through the Licensing Scheme, and that they are obtaining a patent for such technology, constitute unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).

78. DeRisi and Baxter stand to gain royalty income from any licensing fees earned by UC as a result of licensing the plagiarized technology from the Paper, as advertising on the UCSF Licensing website.

79. Upon information and belief, DeRisi and Baxter provided information regarding the plagiarized technology found in the Paper to UC, including the false representation that DeRisi and Baxter were the inventors of the technology in the Paper, for the purpose of commercially advertising the technology through the UCSF Licensing website.

80. Consumers are likely to be misled and deceived by defendants' representations that DeRisi and Baxter invented the technology set forth in the Paper and that they are obtaining a patent pertaining thereto.

81. Defendants knew or should have known that its statements were false or likely to mislead, based on the timeline of communications between DeRisi, Baxter and Parallel, and the sample Parallume beads shared with DeRisi from Parallel Technologies.

82. As an actual and proximate result of defendants' willful and intentional actions, Parallel has suffered damages in an amount to be determined at trial, and unless defendants' are enjoined, Parallel will continue to suffer irreparable harm and damage to its business, reputation, and goodwill.

83. Pursuant to 15 U.S.C. § 1117, Parallel is entitled to damages for defendants' Lanham Act violations, an accounting for profits made by defendants' on the Licensing Scheme, as well as recovery of the costs of this action. Furthermore, Parallel is informed and believes, and on that basis alleges, that defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case

entitling Parallel to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

WHEREFORE, Parallel prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**False Advertising, Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**Against Baxter and DeRisi**

84. Plaintiff hereby incorporates by reference each and every allegation from paragraphs 1 through 83 of this Complaint as though said paragraphs were fully set forth herein.

85. Defendants' actions described above and specifically, without limitation, defendants' false and misleading advertising that DeRisi and Baxter are inventors of the technology in the Paper and being offered through the Licensing Scheme, and that they are obtaining a patent for such technology, false advertising in violation of California Business and Professions Code section 17500, et seq. Among other things, such conduct is deceptive and injures consumers as well as Parallel.

86. Parallel has no adequate remedy at law for the injuries caused by defendants' conduct, acts, and omissions, and the general public will be irreparably harmed if such acts and omissions are not enjoined. Parallel is entitled to injunctive relief to prohibit these acts and omissions and/or continued threatened acts of defendant, to prevent such irreparable harm from happening in the future.

87. As a result of defendants' conduct, acts and omissions, Parallel is entitled to equitable restitution of any and all profits, revenues, compensation or other payments obtained by defendants as a result of its acts of false advertising.

WHEREFORE, Parallel prays for judgment as set forth below.

**SIXTH CAUSE OF ACTION**
**Unfair Competition, Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**Against Baxter and DeRisi**

88. Plaintiff hereby incorporates by reference each and every allegation from paragraphs 1 through 87 of this Complaint as though said paragraphs were fully set forth herein.

89. By virtue of defendants' fraudulent acts described above, defendants have engaged in unlawful and unfair business practices and/or practices that constitute unfair competition under California Business and Professions Code section 17200, et seq.

90. As a direct and proximate result of defendants' unfair competition, Parallel has suffered and will continue to suffer irreparable harm, unless restrained by order of this Court, for which damages will not afford adequate relief. Therefore, Parallel seeks preliminary and permanent injunctive relief.

91. Additionally, as a direct and proximate result of defendants' unfair competition, defendant has been improperly and unjustly enriched at the expense of Parallel. The amount of such unjust enrichment shall be established according to proof at trial.

WHEREFORE, Parallel prays for judgment as set forth below.

**SEVENTH CAUSE OF ACTION**
**Misappropriation of Trade Secrets**
**Against DeRisi and Baxter**

92. Plaintiff hereby incorporates by reference each and every allegation from paragraphs 1 through 91 of this Complaint as though said paragraphs were fully set forth herein.

93. Parallel has invested and continues to invest substantial resources in developing a range of proprietary tools, devices, methodologies, techniques, protocols, instrumentation, knowledge and technologies (the "Proprietary Material") in the furtherance of its business endeavors.

94. The Proprietary Material that Parallel has developed include, but are not limited to, micromachined silicon tools, devices and substrates for protein crystallization, optical encoding technology for assay multiplexing, knowledge regarding the selection and optimal composition of host materials, rare earth phosphors, and rare earth emitters, inkjet printing processes for forming and fabricating Parallume-encoded beads, and optical instrumentation, kits and protocols.

95. Because the Proprietary Material developed by Parallel have tremendous value and are crucial to its success, Parallel makes substantial efforts to keep this information

confidential from its competitors. Among other things, Parallel requires employees to keep information regarding its Proprietary Material confidential and to refrain from using such information in any manner that might aid a competitor or potential competitor.

96. Parallel takes, and at all times here relevant, has taken reasonable efforts to maintain the secrecy of the Proprietary Material it has developed. For example, Parallel employs passwords to protect all of its computer and email systems, uses physical locks to secure and limit access to its office, carefully disposes of obsolete computer systems such that information contained on hard drives are wiped, regularly shreds sensitive physical documents, and requires employees, consultants and customers to sign confidentiality and non-disclosure agreements

97. The efforts Parallel takes to keep confidential its Proprietary Material are reasonable under the circumstances to maintain its secrecy. Parallel takes these measures to ensure the confidentiality of the Proprietary Material because the Proprietary Material derive independent economic value from not being generally known to Parallel's competitors or the general public who can obtain economic value from its disclosure or use. Accordingly, the above-described information constitutes "trade secrets" under California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.*

98. As an employee and subsequently a consultant of Parallel, Baxter acquired knowledge and custody of several Parallel trade secrets. Through use of fraudulent representations to Parallel and unlawful conspiracy with Baxter, DeRisi also acquired knowledge and custody of several Parallel trade secrets. Baxter and DeRisi knew or had reason to know that their knowledge of Parallel trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of those trade secrets or limit their use. Parallel is informed and believes that Baxter and DeRisi disclosed Parallel's trade secrets to UC and that UC knew or should have known that Baxter and DeRisi owed a duty to Parallel to maintain the secrecy of the trade secrets or that Baxter and DeRisi acquired the trade secrets through improper means. In addition to the fact that UC was contacted directly by Parallel regarding the complaints alleged in this matter, Baxter and DeRisi are employees of UC and

therefore their knowledge may be imputed to UC. Parallel is informed and believes that Baxter, DeRisi, and UC have misappropriated Parallel's trade secrets by utilizing them to publish the Paper, offer Parallel technology for sale, and deceptively hold themselves out to be owners and originators of Parallel technology.

99. Defendants' actions constitute a misappropriation of trade secrets under Cal. Civ. Code § 3426 *et seq.*

100. Each of these acts of misappropriation was done willfully and maliciously by defendants, thereby entitling Parallel to exemplary damages and/or attorney's fees to be provided at trial pursuant to Cal. Civ. Code § 3426.3(c).

101. As a direct and proximate cause of defendants' misappropriation of Parallel's trade secrets, defendants have been unjustly enriched and plaintiff has sustained damages in an amount to be proven at trial. Plaintiff has also suffered irreparable harm as a result of defendants' activities and will continue to suffer irreparable injury that cannot be adequately remedied at law unless defendants, and their officers, agents and employees, and all other persons acting in concert with them, are enjoined from engaging in any further such acts of misappropriation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

**ON THE FIRST CAUSE OF ACTION**

1. For compensatory damages in such an amount as is proven at trial;
2. For exemplary and punitive damages;
3. For costs and expenses associated herewith, including reasonable attorney's fees; and
4. For such other and further relief that the Court may deem just and proper.

**ON THE SECOND CAUSE OF ACTION**

1. For compensatory damages in such an amount as is proven at trial;
2. For exemplary and punitive damages;

/ / /

3. For costs and expenses associated herewith, including reasonable attorney's fees; and

4. For such other and further relief that the Court may deem just and proper.

**ON THE THIRD CAUSE OF ACTION**

1. For compensatory damages in such an amount as is proven at trial;

2. For exemplary and punitive damages;

3. For costs and expenses associated herewith, including reasonable attorney's fees; and

4. For such other and further relief that the Court may deem just and proper.

**ON THE FOURTH CAUSE OF ACTION**

1. For issuance of a temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining defendants from advertising that they are the inventors of the technology in the Paper or that they are entitled to a patent on that technology;

2. For issuance of an order requiring defendants to place corrective advertising prominently explaining that Parallel is the inventor of the technology in the Paper;

3. Pursuant to 15 U.S.C. § 1117, for an accounting for profits made by defendants as a result of any sales  and as a result of their unfair competition, as well as additional damages available by statute;

4. For treble damages for defendants' willful acts;

5. For reasonable attorneys' fees and costs; and

6. For such other and further relief that the Court may deem just and proper.

**THE FIFTH CAUSE OF ACTION**

1. For issuance of a temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining Baxter and DeRisi from advertising that Baxter, DeRisi, UCSF or the UC are the inventors of the technology in the Paper or that they are entitled to a patent on that technology;

2. For issuance of an order requiring defendants to place corrective advertising prominently explaining that Parallel is the inventor of the technology in the Paper;

3. For an order requiring defendants to retract the Paper;

4. For costs and expenses associated herewith, including reasonable attorney's fees; and

5. For such other and further relief that the Court may deem just and proper.

**ON THE SIXTH CAUSE OF ACTION**

1. For issuance of a temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining Baxter and DeRisi from advertising that Baxter, DeRisi, UCSF or the UC are the inventors of the technology in the Paper or that they are entitled to a patent on that technology;

2. For issuance of an order requiring defendants to place corrective advertising prominently explaining that Parallel is the inventor of the technology in the Paper;

3. For an order requiring defendants to retract the Paper;

4. For costs and expenses associated herewith, including reasonable attorney's fees; and

5. For such other and further relief that the Court may deem just and proper.

**ON THE SEVENTH CAUSE OF ACTION**

1. For compensatory damages in such an amount as is proven at trial;

2. For exemplary and punitive damages;

3. For issuance of a temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining defendants from advertising that they are the inventors of the technology in the Paper or that they are entitled to a patent on that technology;

4. For issuance of an order requiring defendants to place corrective advertising prominently explaining that Parallel is the inventor of the technology in the Paper;

5. For an order requiring defendants to retract the Paper;

6. For costs and expenses associated herewith, including reasonable attorney's fees; and

7. For such other and further relief that the Court may deem just and proper.

/ / /

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: November 18, 2014

Respectfully submitted,
GRELLAS SHAH LLP

By: /s/
David I. Siegel, Esq.
Attorneys for Plaintiff
PARALLEL SYNTHESIS TECHNOLOGIES, INC.